May it please the Court, Tracey Feer for the Plaintiff, Dr. Clifford Merlo. This case is essentially all about disputed facts, which really should have been resolved in favor of Dr. Merlo at the summary judgment phase. All of the briefing disputes performance. Both sides have evidence. At the summary judgment stage, inferences should have been made in Dr. Merlo's favor. There is not much evidence required to make a prima facie case or to establish pretext. And so the case should have proceeded to trial. Let me just explore a few things with you. Do you have any authority that the same actor inference doesn't apply to age discrimination cases? No. That was just argument on my part that it is difficult given the same actor inference when I mean, the same actor inference is only supposed to apply if things occur in a short period of time. But if it's applied as here, we're talking 2011 to 2014 when the decision was made. I don't know if three years is a short period of time. I would argue not. So it doesn't apply anyway. But even so, people age. So if the same person hired them, the person got older. It's not the same as hiring a woman and then deciding you don't like women. Is the same actor inference conclusive or just a permissible inference? It's a permissible inference. But at summary, judgment inferences are not supposed to be made in favor of the moving party. And there was a lot of other evidence surrounding the decisions that were made such that it's reasonable to find that Dr. Sadeghi may have had ageist motives in making his decision. Ms. Spear, can I ask you a question on the record here? In your brief at page 22, you say that Drs. Sadeghi and Lee both expressed hostility toward employees who filed EEO complaints. You didn't cite anything in the record for that. I'm wondering if you could do that now. I believe it's in my binder. But I believe it was Dr. Fizz III, I believe, who said that he had made a complaint and that after that he was pressured by both. Dr. Sadeghi said that it was Dr. Lee who was asserting the pressure and Dr. Sadeghi was just relaying the message. Sorry, who said this? Who testified to this? I believe it was Fizz III. I don't – Oh, sorry. In case I have – I'm trying not to – I understand. Okay. I didn't quite hear Fizz III clearly. So, okay. All right. Thank you. So, assuming just for a minute that Dr. Sadeghi's comment – and he's, by the way, 10 or 11 years older than your client. But let's assume for a moment that his comment doesn't constitute direct evidence of discrimination. What's your best argument that the VA's proper reasons were pretextual? I'm never good at picking my favorite of things, but I would say my best argument is a combination – Some of your all-time hits. No. Is a combination of the admission that he was performing properly, the performance evaluations that didn't list anything negative, the major argument that it was moving to a research-based position, which is belied by Dr. Sadeghi's post for the job that said it was 100% patient care-based. So, the explanation just doesn't make sense, and the reasons conflict in multiple places. For example, he says he didn't publish a peer research kind of thing. Is that a false or a pretextual argument? I believe so. I don't see any evidence in the record that they cared about that before. Well, the person that they hired did do that, did he not? Not exactly. He has a long CV, but most of it was research he did either in undergrad or in medical school as just someone supporting a professor. He is not a doctor who's published research. I believe that Dr. Merlot's two publications may outnumber his. He's got a number of abstracts listed, which is not the same as a peer-reviewed journal. It's much, much shorter. And I believe he was just assisting someone who was actually licensed to practice. You know, he worked in a lab or something in college and medical school. It wasn't research that he was doing. Plus, again, it's a 100% patient care-based position, as Dr. Sadeghi said. Dr. Sadeghi, in submitting the new job in his repost, said that it was 100% patient care-based. There were at least 15 patients immediately in need of care. And the position had been in place for a long time, had just been vacated in May of 2015, which would be Dr. Merlot. And now they needed a replacement. And the post was for a permanent position, so it's unclear why they said they were replacing Dr. Merlot but had never made him permanent when it appeared he was in the position they were talking about that was supposed to be permanent. So could I, on this question of pretext, you mentioned in your brief near the end you were talking about a request for admission under Rule 36, if I understand that correctly, admit that complainant's performance was satisfactory at the time when you allowed his temporary appointment to expire. That was admitted, correct? Yes. Okay. I would think it might be tough to then come in forward with criticisms. That was my argument, yes, Your Honor. Okay. It was in the EEOC proceeding, but yes. Okay. I'll be interested in opposing counsel's thoughts on that subject, too, so thank you. Yes, and they did admit in discovery responses in the civil case that the responses that they made in the EEOC case were true as they knew things to be at the time. So it was addressed again before the summary judgment motion. So, Ms. Feuer, what do we do with all the evidence of some pretty awful and disrespectful treatment of women on the job by your client? What do we do with that? It looked like he was forwarding. If Your Honor is referring to the e-mails he forwarded and was participating in, really that should have been dealt with at the time. I think there should have been. I assume they talked to him. It doesn't look like it continues. Is there evidence that they talked to him? I thought they said they didn't think it was that big a deal. Well, yes, that's the issue is they're making a big deal of it now, so if one assumes that it is a big deal per their argument, one would assume there would have been a big deal made at the time that something would have been done, some discipline, some training. Did those incidents occur before his most recent reappointment for another term? I am not sure. Yes. Thank you. Yes, his most recent reappointment was, what, October 31st, I believe, 2014, not including the smaller ones. So, yes, they were all fairly remote. It didn't seem like anyone thought it was a fireable or disciplinary or non-renewable offense at the time that they happened, and they've only been brought up now, which if they're a performance issue, they admitted that his performance was satisfactory, so it doesn't appear that that was the reason that his appointment was not removed, nor did anyone say that it was except in the briefing. There was some talk of cumulative issues, but that was a bit vague. With respect to your retaliation claim, as I understand it, the end of at least the series of temporary appointments, the last appointment was set before any of Dr. Malone's protected activity. Is that right? Yes. That would seem to indicate to me, then, that a retaliation claim would have to be limited to the later failure to rehire. Yes, and that was my intention to argue that in the briefing, and I apologize if that wasn't clear. I did not see a way to argue that the initial end was retaliatory based on the record. Can I just go over what I understand to be what you're saying, the pretextual arguments, and get your response? As I understand it, there were five different claims made by the VA. One was that Dr. Sudeiki believed that your client's appointment could not be renewed due to VA policy. What's your response to that? It's unclear what the basis of that belief was, since it wasn't true, and apparently he was corrected on that point at some point before the end of Dr. Malone's employment. So if that were the reason you would think you'd say, oh, my gosh, I was wrong, considering we have all these patients who urgently need care, we will just continue you until the maximum allowable date of August 2016. The second one was the misconduct with respect to women. Your position, I think you've just explained to my colleague about that. The third is lack of interest or training in modern radiological techniques. I did not see support for that in the record. In Dr. Malone's deposition, they asked him about each of the techniques, and he said he was familiar with all of them and had been at the time he was at the VA. There was one he didn't perform at the VA because there was a different doctor designed to do all of the cases of that type, and he was assigned to different cases, such as prostate cancer and others, I think, where that was not a treatment. But he was fully trained and able to perform them, so I'm not clear on what the basis of that argument is. Okay. The next one was the failure to produce published research or medical scholarship during his term at the VA. You kind of responded to that earlier. Yes, it's not a requirement of the job. It wasn't a requirement in the new job posting. He did write an article that he shopped to peer-reviewed journals. Okay. And the final one that they said that there were more qualified applicants. He was at will before basically for short term. They were looking for a permanent person, and this person was more qualified. What's your response to that? It's unclear how they were more qualified. If we're talking about Phys VI, who was ultimately hired over a year later, he had one year post-residency experience when Dr. Malone had 30 years of treating patients in radiation oncology, including being an adjunct professor at UCLA. All of these organizations. He had private practice successfully in Beverly Hills with Cedars-Sinai for many years. He just had a ton of experience treating cancers with radiation, and there's really not a substitute for that kind of experience where no one said he was incompetent at treating patients. And since research was not part of the job, the job was to treat patients which this other person had very little experience in. He wasn't board certified when he applied, which Dr. Sadeghi was a requirement to be board certified in radiation oncology. So even if he got board certified, they didn't know it at the time that he would be. There's testing involved. So from your perspective, each of the claims, legitimate business reasons claimed by the VA, are just either wrong or inaccurate in some way. Yes. And at the very least, there are disputes of fact as to them, which are inappropriate for resolution of summary judgment. Are you saying it's just they're incorrect? I thought your argument had to be they're so incorrect they're dishonest. Yes, that is my argument. They're knowingly incorrect. They believe that Dr. Sadeghi did exactly what he said. He wanted someone young from UCLA to come in and build a career there. And after the fact, that didn't look great, so they looked through his record to find things that seemed problematic, but none of those were the reason at the time. If I might reserve a couple minutes for rebuttal. I just have a quick question about 56D. What do we do with the 56D request? Because there's no affidavit or declaration or any seemingly compliance with the rule. I don't think there was time for a timely notice motion at that time. There was an ex parte. The court was well aware of the situation since the judge and the magistrate took all of the dates off calendar in response to the ex parte except for the summary judgment motion pending the ruling. But the ex parte to move the dates didn't seem to try and make the showing that specified in 56D. I believe that he specified all of the information that was needed and why it was needed for summary judgment in the ex parte. It's very general in terms. I mean, the rule requires a showing by affidavit or declaration that you cannot present facts essential to justify its opposition. That requires some explanation, not just sort of hand-waving, which is what it seems to be. I felt it was more specific than hand-waving. He did not have all the information on the use of temporary versus permanent positions, how everybody in the department had been classified, how those decisions were made, information about the comparators. I believe he set out in the ex parte specific things that hadn't been given. I mean, those were in the discovery motion, but you're saying they were in the ex parte as well as the basis? I believe that they were because the ex parte also sought more time to oppose summary judgment given the outstanding motion to compel, so explained what was needed in some detail for that purpose. Okay. You want to reserve? I would like to, yes. Thank you. Very well. All right. Mr. Cava, is that correct? Mr. Green. Oh, I apologize. I've got the wrong case here. Mr. Green, please. Good morning, Your Honors. Paul Bar-Green. I'm appearing on behalf of the Secretary of the VA. This case is about two things, the non-renewal of Dr. Merleau's temporary term appointment and the non-selection of Dr. Merleau for a permanent position after he left the VA. The totality of the record establishes that there's no triable issue as to the VA's reasons for not renewing and not selecting Dr. Merleau. Dr. Merleau served on a series of term appointments at the VA. He was originally hired by Dr. Sadeghi, and then he was repeatedly renewed by Dr. Sadeghi during the course of his appointment at the VA, which goes to the same actor inference Your Honors had asked about. In August of 2014, Dr. Sadeghi made the decision to renew Dr. Merleau's appointment for what would be the last six-month time period. And did he advise Dr. Merleau at that point that that would be his last renewal? There is nothing in the record, Your Honor, either way on that point. There is an email attached to Dr. Sadeghi's declaration, the first exhibit showing Dr. Sadeghi's thinking for the renewal, which was because of the demands of the department at that time. But after the renewal, there was a series of events over the course of that appointment that reflected poorly on Dr. Merleau's conduct. So basically, in our analysis of this, I gather what the VA is saying is, look, these were, in effect, really short-term appointments. He did get renewed. He made some of the positive comments that Judge Hamilton has asked about, about some of what Judge Merleau did. But when it came to the permanent position, he was looking at something different. In other words, are we judging this as a totality, or are we just looking at the short-term where he was renewed and then where he was not hired as a permanent person? What are we looking at here? Your Honor, there's two claims. There's the claim about the non-renewal of the term appointments, and separately there's the claim about the permanent position. Let's take the short-term one first. I think Dr. Sadeghi said that he couldn't renew this again. Is that correct? Correct, Your Honor. That was Dr. Sadeghi's belief that there was a term limit on the ability to renew Dr. Merleau. And your opposing counsel says that he later learned that was not accurate. So do you agree with that? Yes, Your Honor. Okay. And what do we do with that? That's obviously not true, so I suppose we'd have to treat that as pretextual. Is that right? No, Your Honor. Your Honor, the Ninth Circuit law on pretext is about whether or not the employer's reason is a reasonable belief. And Dr. Sadeghi, in his declaration, said that he relied on Mary Moore, the HR department, about the limits of the term appointment. That is the same testimony from Dr. Dean Norman, who was chief of staff for the entire West L.A. VA. When was he corrected? When was Dr. Sadeghi corrected about that? I'm not sure, Your Honor. There's a declaration from Tenay McNeil that describes the reappointments. I'm not sure when Dr. Sadeghi was corrected on it, but it wasn't at the time that he made the decisions about the term appointment. But that's not one that the VA can rely upon at this point. Is that right? It is, Your Honor, because the Ninth Circuit law on reasons is that even a wrong reason, if it's a reasonable belief, is a justification for pretext. Now, does that question go to a jury, or is that something that can be decided at this point, whether it's a reasonable belief? Your Honor, it's a question for the fact finder. If this case were remanded, it would actually be before the judge of rights because it's an age discrimination case against a federal agency, and that's Lehman v. Nakshim, which was what the court relied on in the second motion to dismiss order. Does that fact change the approach we should take to a summary judgment grant? No, it doesn't, Your Honor. The totality of the record here establishes that there's not a tribal issue. Well, I understand your position. I've got to say, Mr. Green, I was troubled by one thing, many things, actually, in your brief. But one of them, the table of contents says over and over again that plaintiff failed to establish X, Y, and Z. That, of course, is not the standard, all right? It is, Your Honor, in the sense that on pretext but for causation. No. The question is whether there's evidence that would support a finding in the plaintiff's favor, not whether he has established anything. Could I ask you about Dr. Sedeghi's statement to Dr. Merlot that he was old, should retire, and should make room for somebody younger? You have tried to argue, and the district judge accepted the idea, that that was a so-called stray remark. Could you reconcile that with the Supreme Court's decision in Reeves against Sanderson Plumbing, which dealt with much more ambiguous comments not directly tied to the decision to let the plaintiff go? Yes, Your Honor. So assuming the comment was made. We have to assume it was made, correct? Yes, Your Honor. Okay. Please go ahead then. The comment was not made as a part of the decision-making process to renew Dr. Merlot. It was made by the decision-maker to Dr. Merlot, correct? Correct, Your Honor. About how he should retire. Correct, Your Honor. Should not seek another appointment, should not seek another permanent position, right? That would be implicit in that statement. I've got to say, if this is not direct evidence, what would count? Your Honor, I think what would. . . I mean, a letter that's, the non-renewal letter saying we're doing this because you're too old? That would be, would that be enough? In that hypothetical scenario, yes, Your Honor. Okay. And what's different about this? Just not exactly the same time, but it's the decision-maker, right? Correct, Your Honor. Okay. Let me ask you a question about, if you rely a lot on the so-called common or same-actor inference here, and there's a curious disconnect between stray remarks analysis and same-actor inferences, right? And that is, in the same-actor inference, we basically assume that if a person was not biased at time A, when he, for example, decided to hire or reappoint the plaintiff, he was also not biased at the later time B when he decided to fire the plaintiff, right? That's the way the same-actor inference works. The way stray remarks cases work is that we assume that if a person was racist or sexist at time A, the time of the remark, it is not reasonable, it's not even permissible to infer that the person was still racist or sexist or ageist at the later time B when he made or influenced the decision to fire them. Why don't those all just present questions for the trier of fact? Your Honor, I haven't seen a case reconciling those two positions about the two inferences. With the same-actor inference, though, the Ninth Circuit has ruled that it requires an extraordinarily strong showing of discrimination to overcome that. Okay. How about you should retire because you're so old and you should make room for a younger doctor? Yes, Your Honor. Dr. Mello's case comes down to that comment. That's the only piece of evidence about discrimination in his declaration in the record. I think the key here is the totality of the circumstances, that in August of 2014, Dr. Sudeiky had renewed Dr. Mello's appointment for another six months. This comment that was allegedly made took place in November of 2014, three months later after Dr. Sudeiky had renewed Dr. Mello again. When there was still time to make later decisions about whether to renew him again, right? Yes, Your Honor. Because they wound up revisiting this issue several times after that, and there was a later decision about not rehiring him when there was an urgent need for patient care, right? And Dr. Mello came in fifth, right, in the 2015 round of evaluations, right? Yes, Your Honor. And the first four all declined the offer, right? Yes, Your Honor. And Dr. Sudeiky and his colleagues then decided we don't want Mello back. We'll keep this urgently needed position vacant for another year, right? Yes, Your Honor. Why doesn't that allow some room for skepticism about motivation? Sure, Your Honor. It's because of the contemporaneous evidence over the course of that last appointment about Dr. Mello's behavior. He received a complaint from a nurse that said that he had left a patient with chest pain in the hallway. He was warned by Dr. Sudeiky after he sought to send a patient to an outside provider without seeking approval on an e-mail he sent to the Secretary of the VA. I know there's grounds for criticizing him. What do we make, though, also of the admission that he was performing satisfactorily? Your Honor, that was an admission made subject to objections in the administrative litigation. The parties in the federal action, because of the amount of discovery, agreed in the Rule 26-F report that only the deposition transcripts would apply in the federal action. There is no agreement about. . . Why isn't it just an evidentiary admission, even if it's not treated as a binding admission? Because it's so vague not to be useful. What's vague about asking whether somebody's performing satisfactorily? Because it doesn't identify the position or the job or the skill. Is there any doubt about what position, person, or skills were involved? It's a broad question. Is your performance satisfactory? Point taken, Your Honor. But even if it's considered an admission, it would only go to the first prong of the prima facie case. Well, it also has to do, though, with whether performance-based reasons for not hiring, not renewing, or not rehiring are valid, are honest. It seems like a clear contradiction. Now, you can explain that to a trier of fact. We're all familiar with witnesses who contradict themselves or each other and so on, but I don't see how that's not a triable issue of fact. Doesn't the government agree that that's really the issue here? I mean, you've got a direct statement. He's not going to be rehired because he's too old, made by a man who's ten or more years older than Dr. Merlone. It's a troubling issue. Why shouldn't this be sent back to the trier of fact to filter out through these things rather than just relying upon the, in quotes, reasonableness of the argument? Your Honor, I would submit that's because of the Court's decision recently in Opara v. Yellen where the Court found that there was a comment, a discriminatory comment, that was considered direct evidence sufficient for plaintiff to overcome the prima facie element. But on the ultimate issue of pretext, it wasn't enough to establish the pretextual, that the reasons were pretext. Well, that involved a single issue, but I guess what troubles me here, and I think apparently some of my colleagues, is that you have lots of things that were stated as the reasons, and yet when you go through them individually, there's one or more reasonable questions about whether they are true. And what troubles me is if the direct statement that basically we're not going to rehire you because you're too old, if that's not evidence of discrimination, what is? Can you help me with that? It's an interesting question, Your Honor. I would point the Court to the Nitz v. Schindler case. In that case, the alleged discriminating individual made a comment about, quote, old timers, end quote, and pushing them out. And in that case, the Ninth Circuit determined that that was not sufficient to establish pretext and ruled in favor of the District Court's granting of summary judgment for the employer. As you know, it was over a vigorous dissent by Judge Noonan, and it wasn't, was that Judge Fletcher's opinion? I'm trying to remember. No, Willard Fletcher. Yes. It was an interesting problem. I think what we struggle with here, of course, is summary judgment is just like it says. It basically does away with all of the nuances and so on, and there are times when you can avoid that, avoid going on to a trial or at least more work by the trier of fact, in this case a district judge, if you have something that absolutely nails it. But when you have a lot of questions, summary judgment doesn't always work. Isn't that one of these cases? It isn't, Your Honor, because the record establishes that Dr. Merlot, particularly on his last appointment, had a number of issues that were raised to the Chief of Staff, to others about his performance. Dr. Sudeiky had a reasonable belief that Dr. Merlot could not even be renewed. And then when it came time for considering applicants for the permanent position, the VA selected the applicant that had research experience, that was trained in the latest techniques. I would urge the Court to compare the CVs. Your opposing colleague says that's not true, that the person that was hired really wasn't better qualified. Your Honors, I would urge the Court to look at the CVs of Dr. Merlot versus the successful applicant who had over 100 research projects and journals that he was involved in, as well as 18 advanced techniques, which is important to the standard of care in radiation oncology. Other questions? Very briefly on this stray remarks theory. Suppose Dr. Merlot were black and Dr. Sudeiky had said, we can't appoint you because we need to make room for a white doctor in November of 2014. Would that be direct evidence of discrimination? Yes, it would, Your Honor, because I think the difference is we cannot appoint you. It's stating directly a decision and the reason based on discrimination. Okay, I don't want you to dodge this, and I apparently phrased that less artfully than I meant to. Sure. Just take Dr. Sudeiky's comment but make it about race. We need to make room for a white doctor. You should retire, we need to make room for a white doctor. Your Honor, that would possibly be direct evidence of It sure would. Yes. Why is this different? Because of all of the circumstances surrounding the comment, including that Dr. Merlot had hired Dr. Sudeiky had hired Dr. Merlot and renewed his appointment multiple times. I take your point. Thank you. Very well. Any other questions? All right. Thank you, Your Honor. Thank you very much. All right. Ms. Speer. Regarding when Dr. Sudeiky knew about the three to four year thing being wrong, since Dr. Merlot made a complaint through the EEO process, Dr. Sudeiky, Dr. Lee, Dr. Norman were all given questionnaires to sign under penalty of perjury as to the reasons Dr. Merlot was not being renewed, and none of them said at the time it was because he couldn't be renewed again. It was vague things about performance. One of them said his services were no longer needed. So if that was the reason and it was a mistake and nothing unlawful happened, they would have said it when questioned under penalty of perjury. Let me ask you this. We talked about five different claims made by the VA. Let's say that three of the five are demonstrably wrong, but let's say two are accurate. Do they win? No. Based on making non-pretextual step to McDonnell Douglas claims? No, because even if they're accurate, it doesn't mean they were the reason that he was non-renewed and not hired later. There's ample evidence that there were other reasons, including age and retaliation. From your perspective, the district judge, as a trier of fact in this particular approach, needs to look at it. As the trier of fact, yes, at a trial, yes. Your time is up. Let me ask whether either colleague has additional questions. I think not. Thank you both. Your arguments have been helpful. The case just argued is submitted.
judges: SMITH, Hamilton, COLLINS